GIBSON, DUNN & CRUTCHER LLP
CRAIG VARNEN, SBN 172603
  cvarnen@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:     213.229.7000
Facsimile:     213.229.7520

JEFF LOMBARD, SBN 285371
  jlombard@gibsondunn.com
310 University Avenue
Palo Alto, California  94301-1744
Telephone:     650.849.5300
Facsimile:     650.849.5333

*Attorneys for Defendants*
*Grocery Outlet Holding Corp., Robert Joseph*
*Sheedy, and Charles C. Bracher*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE GROCERY OUTLET HOLDING CORP. SECURITIES LITIGATION | CASE NO. 4:25-cv-957-JST |
| | <u>CLASS ACTION</u> |
| | Hon. Jon S. Tigar<br>Courtroom 6 |
| | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |
| | Date:     March 19, 2026<br>Time:     2:00 p.m. |
| | Action Filed:  January 30, 2025 |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT .........................................................................................................2

        A.      Plaintiff Fails to Plead Falsity.................................................................2

                1.      Defendants' August 2023 statements were not false or misleading. ..................2

                        a.      Plaintiff fails to plead a false or misleading statement. ..........................2

                        b.      The challenged statements are not actionable.......................................5

                2.      Defendants' internal control statements were not false or misleading. ..............7

                3.      Defendants' November 2023 and February 2024 statements were not false or misleading. .......7

                        a.      Plaintiff fails to plead a false or misleading statement. ..........................7

                        b.      The challenged statements are not actionable.......................................9

        B.      Plaintiff Fails to Plead Scienter...........................................................10

                1.      Plaintiff's confidential witnesses do not establish scienter..............................10

                2.      The circumstantial allegations of purported knowledge do not support an inference of scienter. ........................12

                3.      The most plausible inference is that Defendants acted in good faith................13

        C.      Plaintiff Fails to Plead Loss Causation ........................................................14

III.    CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

## Cases

*In re Accuray, Inc. Sec. Litig.*,
  757 F. Supp. 2d 936 (N.D. Cal. 2010) .................................................................................11

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) ...................................................................................................4

*Azar v. Yelp, Inc.*,
  2018 WL 6182756 (N.D. Cal. Nov. 27, 2018)......................................................................12

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008).................................................................................................4

*Bhangal v. Hawaiian Elec. Indus., Inc.*,
  2024 WL 4505465 (N.D. Cal. Oct. 15, 2024).......................................................................14

*Brendon v. Allegiant Travel Co.*,
  412 F. Supp. 3d 1244 (D. Nev. 2019) ..................................................................................13

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
  2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) ......................................................................11

*In re Cloudera, Inc.*,
  121 F.4th 1180 (9th Cir. 2024) ......................................................................................3, 8, 9

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010)............................................................................................6, 8

*Davoli v. Costco Wholesale Corp.*,
  854 F. App'x 116 (9th Cir. 2021) ..........................................................................................7

*Emps. Ret. Sys. of P.R. Elec. Power Auth. v. Conduent Inc.*,
  2020 WL 3026536 (D.N.J. June 5, 2020) ..............................................................................5

*In re Facebook, Inc. Sec. Litig.*,
  84 F.4th 844 (9th Cir. 2023) ..................................................................................................4

*In re FibroGen, Inc. Sec. Litig.*,
  2022 WL 2793032 (N.D. Cal. July 15, 2022)........................................................................12

*Glazer Capital Mgmt., L.P. v. Forescout Technologies, Inc.*,
  63 F.4th 747 (9th Cir. 2023) ..............................................................................................4, 6

*Hall v. Rent-A-Ctr., Inc.*,
  2017 WL 6379334 (E.D. Tex. Dec. 14, 2017)........................................................................5

*HRSA-ILA Funds v. Adidas AG*,
  745 F. Supp. 3d 1127 (D. Or. 2024), *aff'd*, 2025 WL 3471703 (9th Cir. Dec. 3,
  2025) .......................................................................................................................................4

ii

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011) ............................................................................................................12

*Lloyd v. CVB Fin. Corp.*,
  811 F.3d 1200 (9th Cir. 2016) ............................................................................................14

*Lomingkit v. Apollo Educ. Grp. Inc.*,
  275 F. Supp. 3d 1139 (D. Ariz. 2017)...................................................................................3

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014)...............................................................................................15

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
  601 U.S. 257 (2024)..............................................................................................................4

*Mallen v. Alphatec Holdings, Inc.*,
  861 F. Supp. 2d 1111 (S.D. Cal. 2012) ...............................................................................13

*In re Maxwell Techs., Inc. Sec. Litig.*,
  18 F. Supp. 3d 1023 (S.D. Cal. 2014) .................................................................................12

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008)........................................................................................14, 15

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020).........................................................................................11, 14

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014).......................................................................................12, 13

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)...........................................................................................................6, 9

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010).................................................................................................8

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014)...............................................................................................12

*Prodanova v. H.C. Wainwright & Co., LLC*,
  993 F.3d 1097 (9th Cir. 2021)...........................................................................................2, 14

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017)...............................................................................................7

*In re Rigel Pharm., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012).................................................................................................4

*Shnayder v. Allbirds, Inc.*,
  2025 WL 1745596 (N.D. Cal. June 23, 2025) ....................................................................12

*In re SunPower Corp. Sec. Litig.*,
  769 F. Supp. 3d 1042 (N.D. Cal. 2025) .............................................................................4, 6

iii

*In re Syntex Corp. Sec. Litig.*,
    95 F.3d 922 (9th Cir. 1996)..................................................................................................6

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007).....................................................................................................10, 13

*In re Towne Servs., Inc. Sec. Litig.*,
    184 F. Supp. 2d 1308 (N.D. Ga. 2001) .................................................................................5

*In re VeriFone Sec. Litig.*,
    11 F.3d 865 (9th Cir. 1993)...............................................................................................1, 5

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021).............................................................................................6, 9

*Zucco Partners LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009).................................................................................................13

## Regulations

17 C.F.R. § 229.308(a)...................................................................................................................7

## I.    INTRODUCTION

This case is a textbook attempt to repackage—entirely after the fact—a disclosed and evolving business challenge as fraud.[1]  Plaintiff's Opposition ("Opp"; ECF No. 40) confirms as much.  Unable to plead facts showing that any challenged statement was false or misleading *when made*—as required by the PSLRA—Plaintiff relies instead on hindsight, speculation, and snippets of Defendants' statements taken out of context in an attempt to transform a difficult but transparently disclosed IT systems transition (the "Systems Transition") into a securities fraud claim.  The PSLRA forbids that tactic.

From the outset, Defendants told investors exactly what they knew, when they knew it.  They warned that the Systems Transition was complex, carried risk, and could disrupt operations and thereby impact the Company's financial results.  As challenges emerged, Defendants updated the market about what they were seeing, how they were responding, and how their expectations were evolving.  That is the model of corporate transparency the securities laws were designed to encourage.  The fact that the Systems Transition ultimately proved more challenging than Grocery Outlet expected is not fraud; it is evidence that Grocery Outlet operates in the real world where challenging business initiatives sometimes lead to disappointing outcomes.  The Complaint should be dismissed because it lacks any particularized allegations establishing contemporaneous falsity or a strong inference of scienter.

The falsity allegations collapse under scrutiny.  Plaintiff does not identify a single fact known at the time of any challenged statement that contradicted anything Defendants said.  Instead, he advances classic "fraud by hindsight" theories, claiming Defendants "must have known" the magnitude of disruptions that later materialized, mischaracterizing comments acknowledging risk as purported admissions of certainty, and relying on later disclosures to infer earlier knowledge.  The Ninth Circuit rejects precisely this type of pleading.  *See, e.g.*, *In re VeriFone Sec. Litig.*, 11 F.3d 865, 871 (9th Cir. 1993).

Scienter presents another insurmountable obstacle.  Plaintiff does not allege *any* motive for fraud and concedes there is none.  Plaintiff, instead, offers a grab bag of weak circumstantial theories

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in Defendants' Motion ("Mot.," ECF No. 39).  Unless stated otherwise, all emphasis is added and all internal citations and quotations are omitted.

that courts have long deemed insufficient: confidential witnesses that cannot speak to Defendants' state of mind regarding the alleged misstatements, vague invocations of "core operations," routine executive departures, and hindsight criticism of disclosures regarding evolving challenges. As the Ninth Circuit has made clear, the absence of any plausible motive is a "substantial hurdle" to pleading scienter and requires "compelling and particularized facts showing fraudulent intent or deliberate recklessness." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1103, 1108 (9th Cir. 2021). Plaintiff pleads no such facts here.

In short, this case presents the exact fact pattern the PSLRA was enacted to prevent: a hindsight-driven attempt to convert business challenges—openly disclosed and based on Defendants' then-best assessment of the facts on the ground—into securities "fraud." As discussed further below, the Amended Complaint should be dismissed in its entirety and with prejudice.

## II.     ARGUMENT

### A.     Plaintiff Fails to Plead Falsity

Plaintiff's Opposition does not cure the fundamental pleading failure identified in Defendants' Motion. It still does not allege with particularity that any challenged statement was false or misleading when made.[2] *See* Mot. at 5–10. Instead, Plaintiff relies on hindsight, speculation about internal processes, and distorted quotations to recast a difficult but disclosed Systems Transition as securities fraud. He falls well short of his stringent pleading burden.

Plaintiff challenges three sets of statements: (1) Defendants' early August 2023 statements about the forthcoming launch of the Systems Transition; (2) Defendants' Q3 2023 internal controls statements and certifications; and (3) Defendants' November 2023 and February 2024 statements regarding progress and expectations for the Systems Transition.

#### 1.     Defendants' August 2023 statements were not false or misleading.

##### a.     Plaintiff fails to plead a false or misleading statement.

Plaintiff's August 2023 falsity theory fails because it ignores a basic timing problem. As Defendants explained, the challenged statements were made on August 8 and 9, 2023—*before* the

---

[2] Notably, Plaintiff does not respond to Defendants' showing that the allegations attributed to the three former employees ("FEs") do not contradict any challenged statement. *Compare* Mot. at 7, *with* Opp. at 7–16.

Systems Transition launched weeks later.  Mot. at 7.  Plaintiff ignores this timing, *see* Opp. at 9–11, asserting that those statements (App'x Statement Nos. 1–4) were misleading because the warned-of "risks" had "already materialized."  Opp. at 12.  That assertion defies logic.  A risk cannot have "already materialized" before the underlying event even occurs.

This timing defect is fatal.  Plaintiff pleads no facts showing that, as of August 8 and 9, 2023, Defendants knew the Systems Transition would cause the magnitude or duration of disruption later experienced, or that any specific operational failure had already occurred or was certain to occur. Securities fraud requires a contradiction between what was said and what was known *then*—not speculation based on how events later unfolded.  *See In re Cloudera, Inc.*, 121 F.4th 1180, 1187, 1189 (9th Cir. 2024).  For instance, in *Lomingkit*, the court dismissed Section 10(b) claims challenging statements about a university's online classroom system upgrade where the defendants "announced technical difficulties and the negative effects of these difficulties" as they arose and the plaintiffs failed to allege that later problems were known *when* the challenged statements *were made*.  *Lomingkit v. Apollo Educ. Grp. Inc.*, 275 F. Supp. 3d 1139, 1161–62 (D. Ariz. 2017); *see also id.* at 1156.  Plaintiff's allegations regarding Defendants' August 2023 statements suffer from the same defect.

Unable to plead contemporaneous falsity, Plaintiff pivots to Defendants' August 2023 risk disclosures,[3] claiming they were misleading because Defendants allegedly "skipped" end-to-end user acceptance testing ("UAT") and did not disclose that fact.  Opp at 11.  That theory fails for two independent reasons.  *First*, the Amended Complaint does not adequately plead that UAT was "skipped" at all.  Plaintiff identifies no report, meeting, or communication showing what testing allegedly did not occur, who made that decision, or when.  To the contrary, Plaintiff concedes that the Company tested the system using "dummy data."  Opp. at 18; ¶ 55.  *Second*, and more fundamentally, even if Plaintiff had plausibly alleged some deficiency in testing, that allegation is irrelevant because

---

[3] Defendants' August 2023 risk disclosures, which incorporated the risk factors from the 2022 Form 10-K, warned that the Systems Transition was complex and could cause operational disruption. Specifically, Defendants disclosed that "[i]t is possible that we could experience implementation, operational and functionality issues, delays, higher than expected costs and other issues during the course of implementing and utilizing these improvements," along with "a risk of business disruption, liability and reputational damage associated with these actions, including from not accurately capturing and maintaining data."  App'x Statement Nos. 1, 2.

3

Defendants had no duty to disclose details about internal testing and project management. Neither the risk factor nor any other challenged August 2023 statement says anything about UAT or any other testing that was or was not done. *See* Mot. at 7; App'x Statements Nos. 1–4. Defendants warned that the Systems Transition was complex and could cause disruption; they did not represent or imply that testing was complete, exhaustive, or risk-free. Absent such a statement, there is no actionable omission. *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 263 (2024); *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012). Ultimately, Plaintiff's UAT theory is simply another way of arguing that Defendants should have predicted, in early August 2023 (*i.e.*, *pre*-launch), that disclosed *risks* would materialize *post*-launch in a manner that was more severe than anyone could have predicted. But the securities laws do not impose liability for failure to foresee, months in advance, how a disclosed risk would ultimately unfold.[4] *See HRSA-ILA Funds v. Adidas AG*, 745 F. Supp. 3d 1127, 1142–44 (D. Or. 2024), *aff'd*, 2025 WL 3471703 (9th Cir. Dec. 3, 2025) (risk disclosures not misleading where plaintiffs failed to allege defendants knew, at the time of disclosure, that Kanye West would engage in future antisemitic behavior; later fallout did not retroactively render earlier risk warnings misleading).

Plaintiff's reliance on Sheedy's November 2023 remarks to plead falsity of the August 2023 statements also fails because it rests on a false premise—that Defendants led investors to believe from the outset that the Systems Transition had no specter of risk. That theory is specious. As discussed above, Defendants expressly warned in August 2023 that the Systems Transition was complex, carried

---

[4] Plaintiff's cases are inapposite. Each involved allegations that defendants framed risks as hypothetical despite possessing undisclosed, concrete facts showing that the warned-of harm had already occurred—a critical feature absent here. *See In re Facebook, Inc. Sec. Litig.*, 84 F.4th 844, 859 (9th Cir. 2023) (risk disclosures misleading where defendants allegedly learned of a "dataset Cambridge Analytica had compiled" and "that the firm had violated Facebook's user data policies"); *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 704 (9th Cir. 2021) (risk disclosures misleading where defendants allegedly knew of "software glitch for a three-year period, which exposed the private information of hundreds of thousands of Google+ users"); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985–87 (9th Cir. 2008) (explanations of future revenue expectations misleading where defendants allegedly knew government "stop-work" orders regarding important contracts were already issued); *Glazer Capital Mgmt., L.P. v. Forescout Technologies, Inc.*, 63 F.4th 747, 778–79 (9th Cir. 2023) (risk disclosures misleading where defendants allegedly knew merger had already failed); *In re SunPower Corp. Sec. Litig.*, 769 F. Supp. 3d 1042, 1055 (N.D. Cal. 2025) (risk warnings inadequate "given defendants' allegedly specific knowledge about SunPower's existing inability to meet its financial obligations").

operational risk, and could disrupt operations and affect results. *See supra* at 3 n.3. Against that backdrop, Plaintiff cherry-picks fragments of Sheedy's later statement acknowledging that management "did expect" some disruption and claims this shows Defendants "always knew" the extent of the problems that ultimately occurred. Opp. at 2, 5, 11, 17, 20. But Plaintiff omits the critical qualifier that defeats the argument: "We did expect as a result, some disruption, *certainly not to this degree or this magnitude*." ¶ 93 (emphasis added). Read in context, Sheedy's statement confirms the severity of the disruption *exceeded* management's expectations—not that Defendants concealed known risks in August 2023.

At bottom, Plaintiff's falsity theory reduces to *post-hoc* disagreement with Defendants' judgment and execution of a complex Systems Transition. But the securities laws do not impose liability for imperfect execution or outcomes that prove worse than expected absent contemporaneous contradictory facts, which are not pled here. *See In re VeriFone*, 11 F.3d at 871.[5]

<b>b.      The challenged statements are not actionable.</b>

In any event, most of the August 2023 statements are also inactionable as a matter of law.

***Forward-Looking Statements.*** Plaintiff effectively concedes that three of the August 2023 statements—App'x Statements Nos. 1, 3, 4—were forward-looking. Opp. at 12. That concession is dispositive. Forward-looking statements are subject to absolute immunity under federal securities laws absent particularized allegations that Defendants made them with actual knowledge of falsity or without meaningful cautionary language. Mot. at 8–9. Plaintiff satisfies neither requirement.

Plaintiff argues that Sheedy's August 2023 statements—including that (1) the store portal "will provide operators with better analytics and easier access to information," App'x Statement No. 3, and

---

[5] Plaintiff's out-of-Circuit "ERP implementation" cases do not change the analysis. Opp. at 7–8. Each involved allegations that defendants affirmatively misrepresented the *current* status or functionality of IT systems while concealing known, concrete failures that had already occurred. *See Emps. Ret. Sys. of P.R. Elec. Power Auth. v. Conduent Inc.*, 2020 WL 3026536, at *2 (D.N.J. June 5, 2020) (allegations of overstated progress despite known modernization failures); *Hall v. Rent-A-Ctr., Inc.*, 2017 WL 6379334, at *2 (E.D. Tex. Dec. 14, 2017) (failure to disclose "long history of stability and functionality problems"); *In re Towne Servs., Inc. Sec. Litig.*, 184 F. Supp. 2d 1308, 1314 (N.D. Ga. 2001) (misstatements about system reliability despite known disruption where "system shut down completely for some period of time"). Plaintiff alleges no comparable misstatements or concealed system failures here.

5

"will allow them to operate even more efficiently," App'x Statement No. 4—fall outside the safe harbor because Sheedy supposedly knew the Systems Transition was "premature" and that disruption had already "materialized." Opp. at 12. That argument fails. Awareness that a complex ERP rollout entails operational risk does not establish actual knowledge that forward-looking expectations will prove false. Nor are public companies required to concede that disclosed risks will unfold in their worst-case form. *See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1193–94 (9th Cir. 2021).

Plaintiff's fallback contention—that cautionary language was not "meaningful"—is similarly misguided. Opp. at 12, 16. Plaintiff pleads no facts showing that, by early August 2023 (several weeks *before* launch), specific disruptions had already occurred in a manner that rendered Defendants' risk warnings misleading. *See supra* at 3–4. To the contrary, Defendants consistently warned that the Systems Transition was complex, that disruption could persist, and that results could be adversely affected. *See* Mot. at 3–4. Plaintiff relies on cases holding that cautionary language was inadequate where defendants framed risks as merely hypothetical despite knowing the warned-of harm had already occurred. But those cases presuppose well-pleaded facts showing that the risk had already materialized in a concrete way known to the speaker.[6] Plaintiff pleads no such facts here. *See supra* at 3.

***Opinion.*** The August 2023 statements discussing potential disruptions, anticipated benefits, and expected improvements were also nonactionable opinions. Mot. at 9–10; App'x Statement Nos. 1, 3, 4. To plead falsity of an opinion statement, Plaintiff must allege particularized facts showing Defendants did not genuinely believe what they said or possessed information fundamentally inconsistent with those views at the time. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 184 (2015). Plaintiff alleges neither. Opp. at 11–12.

***Optimism.*** Defendants' early August 2023 statements touting the Systems Transition's anticipated improvements are paradigmatic corporate optimism. App'x Statements Nos. 3, 4; *see In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010); *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 933 (9th Cir. 1996). Indeed, Plaintiff concedes these remarks were merely "Sheedy boast[ing]." Opp. at 9. And Plaintiff identifies no concrete, verifiable representation in these statements that could

---

[6] Plaintiff again relies on *Forescout* and *SunPower*, Opp. at 12, which fail here for the same reasons described above. *See supra* at 4 n.4.

transform them into actionable misstatements. Plaintiff's reliance on *Quality Systems* is misplaced: optimism is actionable only where the speaker knows the relevant aspect of the business "to be performing poorly," *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017)—a limitation Plaintiff omits from his Opposition. Opp. at 12. Plaintiff does not and cannot plead such facts, because the Systems Transition had not yet launched *when* these statements were made. *See supra* at 3.

### 2. Defendants' internal control statements were not false or misleading.

Plaintiff's attack on Defendants' internal control statements, App'x Statement Nos. 5, 6, fails because it rests entirely on speculation. Plaintiff does not allege that Defendants knew, at the time of their certifications on November 8, 2023, that the Systems Transition had resulted in an identified material weakness in internal controls over financial reporting. Instead, Plaintiff asks the Court to infer earlier knowledge solely from the fact that a material weakness was *later* disclosed in February 2024, claiming "it is reasonable to infer that the material weakness was known by November 2023 because it was caused by the rampant disruptions from the Systems Transition." Opp. at 13. But Plaintiff identifies no contemporaneous facts—no FE allegations, no internal reports, no communications with Grocery Outlet's auditors—suggesting that Defendants had concluded, or even believed, that the operational challenges then experienced required recognition of a "material weakness"—which is a term of art reflecting the outcome of a formal evaluation process, including management assessment and auditor review. *See* 17 C.F.R. § 229.308(a); PCAOB Auditing Standard 2201 ¶¶ 1, A7. That the Systems Transition caused challenges does not mean Defendants were required to conclude, much less knew, that a material weakness existed on November 8, 2023. Plaintiff cannot plead falsity by reasoning backward from a later lack of internal controls determination absent allegations—not present here—of contemporaneous knowledge. *See Davoli v. Costco Wholesale Corp.*, 854 F. App'x 116, 118 (9th Cir. 2021). That pleading gap is fatal.

### 3. Defendants' November 2023 and February 2024 statements were not false or misleading.

#### a. Plaintiff fails to plead a false or misleading statement.

Plaintiff's challenge to the November 2023 and February 2024 statements, App'x Statement

Nos. 7–11, rests on a fundamental mischaracterization. Plaintiff repeatedly recasts Defendants' statements as firm "assurances." Opp. at 14–16. They were not. The challenged statements reflected management's expectations and judgments as the Systems Transition unfolded—often expressly qualified by uncertainty and ongoing implementation challenges. Defendants spoke in terms of what they "expect[ed]," ¶¶ 91, 116, the predicted "impact looking forward," ¶ 93, and how they "anticipate[d] the transitional impacts" to evolve, ¶ 95, while continuing to warn that disruption could persist and forecasting uncertainty. Mot. at 3–4. These statements were not guarantees, and they do not become false simply because later events proved worse than anticipated. *See In re Cutera*, 610 F.3d at 1112–13.

Plaintiff's reliance on later disclosures—particularly May 2024 remarks by non-defendant interim CFO Lindsay Gray regarding forecasting visibility—illustrates the same hindsight defect. Plaintiff argues backward from Gray's later comments to claim Defendants must have known months earlier that forecasting visibility was materially impaired. Opp. at 15. But Plaintiff pleads no facts showing that, at the time of the November 2023 or February 2024 statements, Defendants lacked a reasonable basis for their assessments or believed they were unable to forecast at all. Gray's later statements reflected an evolving understanding as implementation challenges persisted, not the revelation of concealed facts that existed earlier. Using subsequent developments to infer prior falsity is classic fraud by hindsight. *See Cloudera*, 121 F.4th at 1189.

Plaintiff's commission calculation theory fails for the same reason. Plaintiff asserts that because certain commission expenses were finalized after quarter-end, Defendants could not reasonably discuss trends or expectations beforehand. Opp. at 15. But final reconciliation occurring later does not mean earlier statements or directional assessments were false, nor does Plaintiff plead facts showing that Defendants believed their statements lacked a reasonable basis when made. Assertions that Defendants "could not possibly know" certain figures, Opp. at 15, are speculation, which does not state a claim under the PSLRA. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 389 (9th Cir. 2010) (rejecting speculation about what defendants must have known as "appealing in the abstract" but "unsupported by the record").

Plaintiff's theory, taken to its logical end, would convert evolving management judgments

8

during a complex Systems Transition into actionable misstatements whenever later adjustments prove necessary. The Ninth Circuit has squarely rejected that approach. *See Wochos*, 985 F.3d at 1193–94 (rejecting attempt to transform later difficulties into proof earlier statements were knowingly false where plaintiffs "failed to plead that Defendants *knew* their year's end goal was *impossible* to achieve"). The fact that forecasting became more difficult or projections required revision does not substitute for a lack of contemporaneous allegations showing that Defendants' earlier assessments were false or unattainable *when made*.

**b.      The challenged statements are not actionable.**

The November 2023 and February 2024 statements are also inactionable.

***Forward-Looking Statements.*** Plaintiff concedes the November 2023 and February 2024 statements were "facially forward-looking." Opp. at 16. That concession largely resolves the issue. Plaintiff does not plead particularized allegations of actual knowledge of falsity or the absence of meaningful cautionary language. Mot. at 8–9. Plaintiff's attempt to defeat the safe harbor by arguing risks had already "materialized" is unpersuasive and fails for the reasons discussed above. *See supra* at 4 n.4.[7]

***Opinion.*** The November 2023 and February 2024 statements are also inactionable opinions. Plaintiff claims the challenged statements—App'x Statements Nos. 7–11—were misleading because Defendants allegedly knew the Systems Transition entailed risk or lacked a reasonable basis to expect resolution within particular quarters. Opp. at 16. But Plaintiff does not allege particularized facts showing that Defendants did not actually believe what they said or possessed contemporaneous information fundamentally inconsistent with those views. *Omnicare*, 575 U.S. at 186–87. General awareness that a complex Systems Transition involved operational risk—which was obvious to any reasonable investor—does not render Defendants' opinions misleading, and Plaintiff's reliance on later course corrections to infer earlier disbelief is precisely the hindsight pleading the Ninth Circuit rejects.

---

[7] Plaintiff's argument about commission expense risk warnings is a red herring. Opp. at 16. None of the challenged forward-looking statements purport to "assess future commission expenses," let alone provide precise calculations for those expenses. *See* App'x Statements Nos. 1, 3, 4, 7–11. Plaintiff cannot manufacture falsity by demanding cautionary disclosures about a subject Defendants did not speak on.

9

*See Cloudera*, 121 F.4th at 1189 ("[L]ater, sobering revelations do not by themselves make the earlier, cheerier statement a falsehood.").

### B.   Plaintiff Fails to Plead Scienter

Plaintiff's Opposition underscores his failure to plead a strong inference of scienter. The Amended Complaint contains no particularized allegations that Defendants acted with intent to deceive or deliberate recklessness, and critically alleges no motive (*e.g.*, insider trading, unusual compensation, or any concrete personal benefit) *at all*. Instead, Plaintiff relies on generalized allegations, speculation about access to information, and hindsight criticism of later developments. Taken individually or collectively, those allegations fall well short of the "cogent and compelling" inference required. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007).

### 1.   Plaintiff's confidential witnesses do not establish scienter.

Plaintiff leans heavily on allegations attributed to three FEs, but those allegations do not support a strong inference of scienter.

Plaintiff effectively concedes that the allegations attributed to FE2 and FE3 are inadequate, arguing only that he "adequately alleges details about FE2 and FE3's experience, positions, and the basis for their relevant knowledge." Opp. at 22. But Plaintiff, tellingly, does not respond to Defendants' arguments explaining why these witnesses lack the role, access, and foundation necessary to speak to Defendants' state of mind. Mot. at 11–12. FE2 (a regional grocery buyer) and FE3 (an assistant planner) were far removed from the Systems Transition or executive deliberations related thereto. Mot. at 11. Plaintiff does not identify any facts showing otherwise, does not explain how either witness would have personal knowledge of Defendants' mental state, and does not identify any information allegedly conveyed to Defendants contradicting their public statements. FE2 and FE3 are unreliable and irrelevant. *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 996 (9th Cir. 2009).

The allegations attributed to FE1 are no better. Plaintiff emphasizes that FE1 was a Director of Financial Planning and Analysis responsible for forecasting and the "full P&L." Opp. at 21. But that role underscores the defect: FE1 was a *finance* employee, not an IT or systems implementation lead, and there is nothing pled about his finance role that suggests he has any personal knowledge regarding ERP testing decisions, pre-launch readiness, or the operational risks associated with particular testing

10

methodologies. For that reason, FE1's "assess[ment] that by July 2023, the Company was still not ready to implement the SAP systems" lacks the foundation required by *Zucco* and does nothing for scienter. Opp. at 18.

Most critically, none of the FEs interacted with Sheedy or Bracher about the challenged statements, Mot. at 11, or identify a single piece of specific information that was allegedly conveyed to any Defendant and explain how it contradicted a challenged public statement when made. *See* Opp. at 21–22. And while Plaintiff asserts that "FE1 personally reviewed the tracking documents," Opp. at 22, he never alleges *what* those documents said, *when* they were reviewed, or *how* they undermine any public statement. Plaintiff's pleading by implication is insufficient. *See, e.g.*, *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 416–17 (9th Cir. 2020) (rejecting FE's allegations that were "high on alarming adjectives" but "short on the facts").

Even if credited, the FE allegations amount to nothing more than disagreement with management's business judgment. No FE alleges that any Defendant believed the Company was underprepared for launch, received warnings that the Systems Transition should not proceed, or was told that the absence of any particular testing could expose the Company to the specific disruptions that later occurred. At most, Plaintiff alleges that FE1 believed implementation challenges existed pre-launch but there is no allegation that he ever voiced his concerns to any Defendant or otherwise alerted anyone else in management. ¶¶ 43–48, 50–55. Courts routinely reject attempts to plead scienter based on former employees' hindsight opinions or second-guessing of executive decisions. *See, e.g.*, *In re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 949 (N.D. Cal. 2010) ("[I]t is difficult to surmise how the opinions and observations of the CWs could support a reasonable inference about what the[] Defendants knew or did not know"). Absent allegations that Defendants received concrete warnings or specific information tying alleged readiness gaps to the risks that ultimately materialized, Plaintiff's FE allegations do not support a strong inference of scienter. *See City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *19 (N.D. Cal. Dec. 17, 2019) (no scienter inference from FE allegations because "[m]ore specific facts must be pled" about what executives "knew at the time").

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 4:25-CV-957-JST

### 2. The circumstantial allegations of purported knowledge do not support an inference of scienter.

Because the Complaint pleads no facts showing that any Defendant had actual knowledge that the challenged statements were false when made, Plaintiff falls back on several circumstantial theories: (1) mischaracterizing Sheedy's November 2023 comments; (2) invoking "core operations"; (3) pointing to routine executive departures; and (4) repackaging failed falsity theories. Each fails.

*Sheedy's November 2023 Comment.* Plaintiff again argues that Defendants "always knew" the Systems Transition would cause disruptions, relying on Sheedy's November 2023 remarks. That theory fails to establish a strong inference of scienter for the same reason it fails on falsity.[8] *See supra* at 4–5.

*Core Operations.* Plaintiff's "core operations" theory also fails because Plaintiff still never identifies what specific adverse facts should be imputed to Defendants. Although Plaintiff acknowledges the doctrine requires "allegations of specific information . . . conveyed to management," he offers none—only vague references to Bracher's supposed "access to the information."[9] Opp. at 19. That is precisely the sort of conclusory pleading the Ninth Circuit rejects. *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1064 (9th Cir. 2014) (rejecting core operations theory where "Plaintiffs never plausibly allege that specific information was conveyed" to management). Allegations that executives attended meetings or were "hands on" during a complex business initiative do not establish scienter as a matter of law. *See Shnayder v. Allbirds, Inc.*, 2025 WL 1745596, at *22 (N.D. Cal. June 23, 2025).

*Executive Departures.* Plaintiff's reliance on Sheedy's and Bracher's departures is equally

---

[8] It is also irrelevant to Bracher because scienter must be specifically pleaded "with respect to *each* of the individual defendants." *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014). Buried in a footnote, Plaintiff concedes the statement "is not attributed to Bracher," which effectively ends the inquiry, but nonetheless attempts to impute scienter to him based on Sheedy's remarks. Opp. at 18 n.8. That mismatch theory is foreclosed by Supreme Court precedent because Plaintiff pleads no facts showing that Bracher exercised ultimate authority over the statement, approved it, or otherwise controlled its content. *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). Nor may Plaintiff bootstrap scienter by imputing one executive's alleged state of mind to another. *In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1032–33 (S.D. Cal. 2014).

[9] For that reason, Plaintiff's cases—involving allegations of specific contradictory information—are inapposite. *See Azar v. Yelp, Inc.*, 2018 WL 6182756, at *20 (N.D. Cal. Nov. 27, 2018) (internal metrics contradicting public statements about advertising performance); *In re FibroGen, Inc. Sec. Litig.*, 2022 WL 2793032, at *30 (N.D. Cal. July 15, 2022) (internal clinical data contradicting public statements about trial results).

unavailing.  Plaintiff argues that Bracher's departure and Sheedy's later exit "lend support" to scienter because they occurred amid operational challenges and were viewed by analysts as "surprising." Opp. at 21.  But timing alone does not support a strong inference of scienter.  *Zucco*, 552 F.3d at 1002. And here, the timing undermines Plaintiff's fraud theory.  As Defendants explained, Bracher's resignation was announced on December 8, 2023, effective nearly three months later, and was disclosed as a "personal decision," and accompanied by a consulting agreement to "support the transition."[10] Mot. at 14–15.  Plaintiff does not dispute these facts, instead speculating about "PR spin."  Opp. at 21. But that is not alleged in the Amended Complaint so cannot be considered.  And by Plaintiff's own allegations, Sheedy departed five months after the alleged problems were fully disclosed to investors and pursuant to a mutually agreed decision with the Board.  ¶¶ 12, 136–39.  Conclusory assertions that he was "held responsible" for being "woefully unprepared" do not establish scienter.  *See Zucco*, 552 F.3d at 1002; *Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1138–39 (S.D. Cal. 2012).[11]

*Repackaged Falsity Theories.*  Plaintiff's final scienter gambit—relabeling his failed falsity theories about forecasting visibility and internal controls as evidence of scienter, Opp. at 20–21—adds nothing.  *See supra* at 12.  Plaintiff pleads no facts showing that Defendants actually knew, at the time of the challenged statements, that they lacked adequate visibility to forecast results or that a reportable material weakness existed.  Allegations that forecasting later became more difficult, that estimates were revised, or that a material weakness was later identified do not establish deliberate recklessness, much less contemporaneous knowledge.  *See In re NVIDIA*, 768 F.3d at 1058–59.

**3.     The most plausible inference is that Defendants acted in good faith.**

Scienter, here, is foreclosed by the lack of plausibility.  Under *Tellabs*, Plaintiff must plead facts giving rise to a strong inference of fraudulent intent that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Tellabs*, 551 U.S. at 324.  Plaintiff's

---

[10] Perplexingly, Plaintiff argues that the Company's explanation for Bracher's departure—contained in the Company's December 11, 2023 Form 8-K, ECF No. 39-8 at 1—is "evidence that should not be considered at this stage."  Opp. at 21.  But Plaintiff does not challenge Defendants' Request for Judicial Notice, ECF No. 39-12, let alone that exhibit, which is incorporated by reference.  *Id.* at 3–4.

[11] Plaintiff's reliance on *Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244 (D. Nev. 2019), is misplaced.  There, the court relied on allegations that an executive resigned immediately after public revelations of previously concealed safety violations and that the departure was tied to those disclosures.  *Id.* at 1263.  Plaintiff pleads no comparable facts here.

13

allegations fall well short of that demanding standard.

At its core, Plaintiff's theory defies common sense. Why would Sheedy and Bracher—both well-respected, long-tenured executives—risk their careers to commit fraud? Plaintiff has no answer to that foundational question. The Amended Complaint pleads no *possible* motive, and Plaintiff concedes there is none. Opp. at 23. That omission is decisive. As the Ninth Circuit has explained, where a complaint alleges no motive, a plaintiff faces "a substantial hurdle in establishing scienter," and "[o]nly where a complaint otherwise asserts compelling and particularized facts showing fraudulent intent or deliberate recklessness will we overlook the failure to allege a plausible motive." *Prodanova*, 993 F.3d at 1103, 1108. Plaintiff comes nowhere close to clearing that "substantial hurdle." *See also Nguyen*, 962 F.3d at 415 (scienter allegations without motive did "not resonate in common experience"). *Bhangal v. Hawaiian Elec. Indus., Inc.*, 2024 WL 4505465 (N.D. Cal. Oct. 15, 2024) is illustrative. There, "the lack of alleged motive . . . tip[ped] the scale in favor of Defendants on scienter" where the plaintiffs, like here, relied on generalized assertions of executive access to information rather than "particularized facts" showing contemporaneous knowledge of falsity. *Id.* at *15–16.

The innocent inference is not only more cogent and compelling, it is obvious. Defendants undertook a complex Systems Transition, warned investors about the risks, disclosed challenges as they emerged, and revised expectations as their understanding evolved. That pattern of conduct is fundamentally at odds with an intent to commit fraud; instead, it is fully consistent with good-faith efforts to manage and disclose a difficult operational initiative that ultimately proved more challenging than the Company originally expected. Plaintiff's contrary theory—that Defendants knowingly misled investors while simultaneously disclosing disruptions and course-correcting in real time, with no skin in the game—is implausible.

C.    **Plaintiff Fails to Plead Loss Causation**

Finally, Plaintiff's claim independently fails because he has not pleaded loss causation. To do so, Plaintiff must allege that a later disclosure revealed a previously concealed "truth" that relates back to an earlier misstatement—*i.e.*, information Defendants knew, but allegedly failed to disclose, when they spoke—and that this revelation, rather than mere materialization of a disclosed risk, caused the

14

stock price decline. *See, e.g.*, *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210–11 (9th Cir. 2016); *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063–64 (9th Cir. 2008). Plaintiff does not satisfy that requirement.

Plaintiff identifies no disclosure that revealed a fact Defendants allegedly knew but previously concealed. Instead, Plaintiff points to *later* announcements that the Systems Transition proved *more* disruptive and longer lasting than initially expected. That is not loss causation. Later-developing difficulties do not "relate back" to earlier statements unless they reveal those statements were false when made. *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014). As explained above and in the Motion, Defendants disclosed what they knew at each point in time and updated investors as their understanding evolved. *See supra* at § II.A.3; Mot. at 2–4. Plaintiff alleges no corrective disclosure, only subsequent bad news that was not, and could not have been, known earlier. Opp. at 24–25. That theory fails to plead loss causation as a matter of law. *See Metzler*, 540 F.3d at 1063–64.[12]

### III.   CONCLUSION

The Court should dismiss the Amended Complaint in its entirety and with prejudice.

DATED: January 30, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Craig Varnen*
      Craig Varnen

*Attorneys for Defendants Grocery Outlet Holding Corp., Robert Joseph Sheedy, and Charles C. Bracher*

---

[12] Plaintiff concedes his Section 20(a) claim is entirely derivative of his primary Exchange Act claim. Opp. at 25. Accordingly, because there is no Section 10(b) violation, the Section 20(a) claim must also be dismissed.